FRED W. MORRIS ET AL. PET'RS.

*vs.*

HAROLD I. GOSS

SECRETARY OF STATE

Cumberland.　Opinion, October 5, 1951.

*Jacob H. Berman,*
*Edward J. Berman,*
*Sidney W. Wernick,*
*Berman, Berman and Wernick,* for petitioners.

*Alexander A. LaFleur, Attorney General,*
*Boyd L. Bailey,*
*Powers McLean,*
    *Asst. Attys. Gen'l.,* for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MERRILL, J. On exceptions. This is a mandamus proceeding by which the petitioners seek to compel the Secretary of State to receive petitions invoking the referendum provided for in the Constitution of this State on a bill enacted by the Legislature as an emergency measure and entitled "An Act Imposing a Sales and Use Tax." The petitioners for the writ were citizens, taxpayers and electors of the State of Maine whose names appeared on the voting lists of the various cities and towns in which they resided as qualified to vote for Governor of the State of Maine. The petitioners instituted the petition for mandamus in their own names upon the refusal by the Attorney General of the State of Maine, after being duly requested so to do, to permit the use of his name, title or office to proceed by mandamus against the Secretary of State regarding the controversy set forth in the petition.

The 95th Legislature of the State of Maine enacted "An Act Imposing a Sales and Use Tax," the same being designated as Chapter 250 of the Public Laws of 1951. This act will be hereinafter referred to as Chapter 250. This act purported to be enacted as an emergency measure to take

effect when approved and it was approved by the Governor on the 3rd day of May, 1951. On the 19th day of May, 1951, the Legislature enacted "An Act for the Assessment of a State Tax for the Year Nineteen Hundred and Fifty-one and for the Year Nineteen Hundred and Fifty-two," designated as Chapter 213 of the Private and Special Laws of 1951. This act will be hereinafter referred to as Chapter 213. This act also purported to be enacted as an emergency act to take effect when approved. It was approved by the Governor May 21, 1951.

Chapter 213 materially amended certain provisions of Chapter 250.

In the petitions for a referendum the petitioners set forth a copy of Chapter 250 as originally enacted, ignoring the amendments thereto which had been made by Chapter 213.

Chapter 250 contained the following emergency preamble:

"**Emergency preamble.** Whereas, the essential needs of state government require that additional revenue be raised by this legislature; and

Whereas, the revenue to be collected under the provisions of this act may not be sufficient to provide for said needs during the next fiscal biennium unless the tax is imposed on retail sales made on and after the date of beginning of the next fiscal year, namely, July 1, 1951; and

Whereas, it is necessary to proceed immediately to create and organize an efficient administrative agency for the collection of said tax on and after July 1, 1951; and

Whereas, in the judgment of the legislature, these facts create an emergency within the meaning of the constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,".

Chapter 250 also contained the following emergency clause:

"**Emergency clause.** In view of the emergency cited in the preamble, this act shall take effect when approved."

The basic controversy between the parties is whether Chapter 250 is subject to the referendum provisions of the Constitution. The respondent, Secretary of State, alleges that the bill was duly and legally enacted in compliance with the terms of the Constitution as an emergency measure, that it thereby took effect when approved by the governor and that therefore it is not subject to referendum.

He also claims that the petitions invoking the referendum are invalid as not complying with that portion of Section 20 of Part Third, Article IV of the Constitution which provides, "The petitions shall set forth the full text of the measure requested or proposed." This claim is based upon the fact that the measure set forth in the petition is Chapter 250 as originally enacted and without the amendments thereto enacted by Chapter 213.

He further claims that the questions involved in the case are now moot because the constitutional ninety-day period for filing referendum petitions has elapsed, and that the tender of valid petitions in a sufficient number cannot be the equivalent to filing the same. He further claims that the question is moot because even if the Secretary of State is compelled to receive the petitions under the mandamus, other time limits, for action thereon, expressed in the Constitution cannot be complied with.

The petitioners, on the other hand, claim that Chapter 250 was not constitutionally enacted to take effect as an emergency measure, and that not being so enacted it was subject to referendum. As to the claim that the petitions are invalid, the petitioners allege that the Constitution, Article IV, Part Third, Section 17, contemplates a refer-

endum not only upon the whole but upon a part or parts of an enacted bill and that therefore, the petitions comply with constitutional requirement. They also take issue with the respondent on the other issues raised by him.

The Justice of the Superior Court ordered the first or alternative writ to issue. The Secretary of State filed a return. To this return the petitioners demurred. The justice sustained the contentions of the respondent that the bill was constitutionally enacted as an emergency measure and that the referendum petitions were invalid, overruled the demurrer and denied the peremptory writ. To the ruling of the presiding justice the petitioners alleged exceptions which were allowed and certified to the Chief Justice in accordance with the provisions of Sec. 18 of Chap. 116 of the Revised Statutes. It is upon these exceptions that the cause is now before the justices.

If Chapter 250 was constitutionally enacted as an emergency measure it was not subject to referendum and that fact would be decisive of this case. As we sustain the ruling of the justice below on this ground it will be unnecessary to consider the other grounds of objection by the respondent to the issue of the peremptory writ.

We are not unmindful of the well established rule that questions of constitutional law should not be passed upon unless strictly necessary to a decision of the cause under consideration. *Payne* v. *Graham*, 118 Me. 251. This rule should not be departed from except for strong reason and under extraordinary circumstances. The rule is particularly applicable to cases involving the validity of action by the Legislature, a coordinate branch of government. One of the basic reasons for the rule is that the court should refrain from the exercise of its undoubted authority to declare legislative action to be in violation of the Constitution except in those cases where such declaration is absolutely required of it, thereby exhibiting the respect which one co-

ordinate branch of the government should render to another. Furthermore, except in extraordinary cases the court will rely upon the presumption of the constitutionality of legislative action and not even examine the question unless a determination thereof is strictly necessary to a decision disposing of the cause before it for determination.

We believe, however, that we should depart from the rule in this case. It is a cause of great public moment. More than thirty thousand (30,000) citizens have sought to nullify legislative action on the ground that it was taken in violation of constitutional provisions. It is the first time in the history of this State that such a controversy has arisen between the people, as such, and the Legislature. We believe it to be in the public interest that we decide this cause not upon a technicality or technicalities, but squarely upon the constitutionality of the exercise of legislative power by the Legislature. Surely it is no disrespect to that branch of government to examine its action and to hold (as we do hold) that it has acted with strict fidelity, not only within its constitutional authority, but in the discharge of its duty as an independent branch of government.

Section 16, Part Third of Article IV of the Constitution is as follows:

"No act or joint resolution of the legislature, except such orders or resolutions as pertain solely to facilitating the performance of the business of the legislature, of either branch, or of any committee or officer thereof, or appropriate money therefor or for the payment of salaries fixed by law, shall take effect until ninety days after the recess of the legislature passing it, unless in case of emergency, (which with the facts constituting the emergency shall be expressed in the preamble of the act), the legislature shall, by a vote of two-thirds of all the members elected to each house, otherwise direct. An emergency bill shall include only such measures as are immediately necessary for the preser-

vation of the public peace, health or safety; and shall not include (1) an infringement of the right of home rule for municipalities, (2) a franchise or a license to a corporation or an individual to extend longer than one year, or (3) provision for the sale or purchase or renting for more than five years of real estate."

Counsel for the respondent strenuously contend that the court has *no authority* to review a legislative determination that an act is immediately necessary for the preservation of the public peace, health or safety. On the other hand, counsel for the petitioners as vigorously contend to the contrary.

The briefs submitted are of unusual excellence. They are exhaustive and contain the authorities relied upon as sustaining the respective views of the parties. They also contain clear analyses of opposing authorities and seek to apply or to distinguish the same from the case at bar. It would be of little profit in this opinion, however, to either cite these authorities *in extenso* or to discuss them in detail. They may be found in the notes in 7 A. L. R. 522, 110 A. L. R. 1435 and the citations supplemental thereto in the A. L. R. Blue Book and latest supplement thereto.

The respondent's position is perhaps best stated in *State ex rel Schorr* v. *Kennedy*, 132 Ohio State, 510, 9 N. E. (2nd) 278, 110 A. L. R. 1428 where it is stated:

"A fundamental principle should not be surrendered to meet the exigencies of a passing case. If every member of the court concurring in this decision were of the opinion that the act presently before us is not on its face an emergency measure, that would not alter the situation in the slightest under the rule of adoption. In other words, since the people in their Constitution have made the General Assembly the exclusive arbiter of whether a proposed act is in truth an emergency measure upon a dual affirmative vote of at least two-thirds

of the elected members, no court has the power or authority to interfere with the judgment so exercised. If the General Assembly abuses its prerogative, the people are not lacking for methods of correction.

The contrary rule would permit a court to step from its bench to the legislative halls and arbitrarily or capriciously override the judgment of the department of government to which the enactment of legislation has been expressly confided by the people."

The position of the petitioners is well stated when in referring to the foregoing case and the dissenting opinion therein by Mr. Justice Day they say:

"In no way does the court purport to answer the contention of Justice Day in his dissent that the explicit requirement of a statement of reasons, was: 'unquestionably intended as a check upon the Legislature to prevent the evil of legislative encroachment, upon the right of referendum reserved to the people. This check should not be released by the courts.

Where the Constitution requires a statement of reasons for the declaration of an emergency, such requirement, by implication, imposes a limitation upon the power of the Legislature. Where the declaration is not warranted by the reasons assigned, the enactment does not take immediate effect.' "

Although in *Payne* v. *Graham,* 118 Me. 251, we recognized the conflicting views and decisions and deferred passing upon the question of our own authority in the premises, in that case, however, we did announce a general principle which we now hold decisive of the present issue. In that opinion we stated:

"Obviously the test is the extent to which legislative power is limited by the Constitution. Constitutional limitations are subjects of judicial interpre-

tation and effectuation. Questions of public policy, such as the justice, expediency, necessity or urgency (immediate necessity) of laws are for final legislative determination. But the control by the Legislature of even these questions may be qualified by express constitutional limitation."

In that same opinion we further said referring to Section 16, Part Third of Article IV of the Constitution above quoted:

"We think it clear that the above quoted language of the Maine Constitution creates a limitation upon legislative power and that without conforming to it no act can be made an emergency act and as such be given immediate effect."

In *Payne* v. *Graham* we held that the requirement of an expression in the preamble of the facts constituting the emergency was essential and that it was a limitation on the unrestrained power of the Legislature to enact emergency measures.

That case further stands for the legal principle that whether or not the Legislature has made an allegation of a fact or facts is a question of law and, as such, may be reviewed by the court. In *Payne* v. *Graham* we further stated, as above set forth, "Constitutional limitations are subjects of judicial interpretation and effectuation."

It is to be remembered that we are now interpreting our own Constitution. In so doing, we are not bound by any of the interpretations which other courts may have made of their own Constitutions. Nor do we follow such interpretations except to the extent that the reasoning upon which they rest is convincing to us when applied to our Constitution.

We said in *Farris* v. *Goss*, 143 Me. 227, 230:
"Article XXXI of the Constitution of this state became effective as an amendment on January 1,

> 1909, almost forty years ago. It made a fundamental change in the existing form of government in so far as legislative power was involved. Formerly that power was vested in the House of Representatives and the Senate. By the amendment the people reserved to themselves x x x x x power at their own option to approve or reject at the polls any act, bill, resolve or resolution passed by the joint action of both branches of the Legislature. (This general statement, of course, must be modified by excepting therefrom emergency measures enacted as such in the manner prescribed by the Constitution.) x x x x x The significance of this change must not be overlooked, particularly by this court whose duty it is to so construe legislative action that the power of the people to enact their laws shall be given the scope which their action in adopting this amendment intended them to have."

It is not only with a realization of our said duty as declared in *Farris* v. *Goss* but in the discharge of our paramount duty to support the Constitution of this State that we decide the fundamental question as to the extent of our authority to review legislative action in the adoption of emergency legislation. We believe the rule which we adopt herein will guarantee to the people to its full extent the exercise of such legislative power as they have reserved to themselves; and with respect to the power to enact emergency legislation conferred upon the Legislature give full effect to the constitutional limitations thereon, in accord with principles announced in *Payne* v. *Graham*.

In examining the sufficiency of an emergency preamble the question of whether or not the Legislature has *expressed* (to wit, made an allegation of) *a fact or facts* is a question of law. Whether or not such fact or facts *can constitute an emergency* within the meaning of the Constitution is likewise a question of law. These questions of law may be reviewed by this court. On the other hand, whether or not a fact expressed as existing, does exist, is a question of fact

and not of law. It is likewise a question of fact whether or not an expressed fact which can constitute an emergency, does constitute an emergency. These questions of fact are within the exclusive province of the Legislature for its determination. A determination of these questions by the Legislature being a determination of fact and not of law, and being a determination within its exclusive province, is not subject to review by this court.

The foregoing principles of law relative to spheres of legislative and judicial authority are analogous to those applied by this court in the interpretation of Section 21 of Article I of the Constitution. That article is as follows:

"Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it."

In the case of *Moseley* v. *Water Co.* 94 Me. 83, 89 we said:

"It must be remembered that the question, whether the necessity exists for the granting of this right to take private property for a public use, is a legislative and not a judicial one. The use being public, the determination of the legislature that the necessity exists which requires private property to be taken, is conclusive. Whether a particular use for which land is taken, under the exercise of the right of eminent domain is public or not, is a judicial question; but as to whether the necessity exists for taking lands for a public use by the exercise of the right of eminent domain is a legislative question."

Under this and similar cases the principle is well established that no declaration by the Legislature that the use for which the power of eminent domain is granted is a public one is conclusive. The question of whether or not the use is a public use within the contemplation of the Constitution is one of law and is a proper subject for determination

by the courts. On the other hand, it is equally well settled that whether the public exigencies require that land be taken for a public use is a question of fact, and its determination is exclusively within the province of the Legislature.

We will now examine the emergency preamble used in Chapter 250 and determine whether it expresses a fact or facts as constituting an emergency, and if so, whether the fact or facts so expressed as constituting an emergency can constitute an emergency within the meaning of that term as used in the Constitution. As heretofore intimated, we answer both of these questions in the affirmative. The contention of the petitioners to the contrary cannot be sustained. Nor can we sustain their position that the only emergency, if any there be, was created by the act itself.

The particular fact expressed in the preamble which we hold sufficient for that purpose is that "the essential needs of state government require that additional revenue be raised by this legislature;". This allegation must be interpreted as meaning, and we hold that it does mean, that the revenues for which provision was then made by existing law were insufficient to carry out the *essential* needs of the government of the State of Maine.

One of the meanings of *essential* as defined in Webster's New International Dictionary, Second Edition, Unabridged, 1948, is *indispensable,* which word in turn is there defined as *"impossible to be dispensed with or done without; absolutely necessary or requisite."* In the Standard Dictionary it is defined not only as *indispensable* but as *necessary* and as *"absolutely requisite."* One of the meanings assigned to the word essential is *"indispensably necessary."* See *Pittsburg Iron & Steel Foundries Co.* v. *Seaman-Sleeth Co. D. C. Pa.,* 236 F. 756, 757.

It is a well recognized principle of constitutional law that every reasonable presumption will be made in favor of the

constitutionality of an act enacted by the Legislature. We said in *Browne et al.* v. *Connor et al.*, 138 Me. 63, 66:

"At the same time we must, if possible, interpret the language which the legislature has used in such manner as to sustain the enactment rather than to defeat it. The presumption is that the legislature has not disregarded constitutional prohibitions. *State* v. *Rogers*, 95 Me., 94, 49 A., 564, 85 Am. St. Rep., 395; *Ulmer* v. *Lime Rock Railroad Co.*, 98 Me., 579, 57 A., 1001, 66 L.R.A., 387; *State* v. *Pooler*, 105 Me., 224, 74 A., 119, 24 L.R.A., N.S., 408, 134 Am. St. Rep., 543; *Laughlin* v. *City of Portland*, 111 Me., 486, 90 A., 318, 51 L.R.A., N.S., 1143."

In accord with that rule of construction we interpret the word *essential* as used in the preamble of Chapter 250 as meaning *indispensable, absolutely requisite* and *indispensably necessary.*

The statement contained therein "the essential needs of state government require that additional revenue be raised by this legislature" is a statement of a then existing fact, to wit, that the needs of the state government, which needs are *indispensably necessary*, cannot be met unless additional revenue be raised by the 95th Legislature. It is urged by the petitioners that this is but the statement of a conclusion and not a statement of fact. It is urged by the petitioners that this statement fails to set forth the essential needs of the State government which require revenue in addition to that then provided by existing law. This objection cannot be sustained. The only logical alternative to the use of this broad general statement, which we hold to be a statement of fact and not a conclusion, would be to set forth in the emergency preamble of an act to raise revenue the entire budget of the State of Maine which was to be met either in whole or in part by the tax imposed, together with a recital of the then existing revenues available to meet the same. The Constitution of this State does not require any such un-

reasonable interpretation of the phrase "facts constituting the emergency."

It is true that *Payne* v. *Graham, supra,* is authority for the proposition that the provision of the Constitution requiring that "the facts constituting the emergency shall be expressed in the preamble of the act" is not satisfied by the recital of a mere conclusion instead of facts. However, that constitutional requirement is satisfied by the expression in the preamble of an ultimate fact or facts which constitute an emergency without a recital of all of the separate facts evidencing the existence of such ultimate fact.

If the existing revenue of the State is insufficient to meet the essential needs of the State, that in and of itself is an ultimate fact, and such fact is expressed with sufficient definiteness when it is stated as it was here stated in the first clause of the preamble to Chapter 250. This first clause in the emergency preamble expresses a fact, and if the fact so expressed can constitute an emergency within the meaning of the Constitution of this State, which emergency requires the proposed legislation as immediately necessary for the preservation of the public peace, health or safety, and the emergency preamble, as here, so declares, the emergency preamble is sufficient, and we do not need to consider the sufficiency of the facts expressed in the other clauses of the preamble.

A consideration of the fundamental nature of the power of taxation and its relationship to government, the necessity of its exercise to assure the preservation of the public peace, health and safety, together with a consideration of the duty of the Legislature to provide with certainty for the essential needs of government by the imposition of the taxes necessary therefor is determinative of this case.

Taxation is a sovereign right. As such it is an attribute of sovereignty. It is essential to the existence of govern-

ment. *Camden* v. *Village Corporation,* 77 Me. 530, 536. This right is so vital and so essential to the existence of government that the suspension or surrender of the power of taxation by the Legislature is expressly prohibited by the Constitution of this State. Const. Art. IX, Sec. 9.

The Supreme Court of the United States well said in *Leigh* v. *Green,* 193 U. S. 79, 87:

> "The right to levy and collect taxes has always been recognized as one of the supreme powers of the State, essential to its maintenance, and for the enforcement of which the legislature may resort to such remedies as it chooses, keeping within those which do not impair the constitutional rights of the citizen."

As said by the same court in *Lane County* v. *Oregon,* 7 Wallace (U. S.) 71, 76:

> "Now, to the existence of the States, themselves necessary to the existence of the United States, the power of taxation is indispensable. It is an essential function of government."

The exercise of the power to tax necessarily involves two steps, both of which are within the sole province of the Legislature: first, a determination of the nature of the tax to be imposed; and, second, the effective imposition of the tax in such a manner as to insure its collection and availability to the State for the purposes for which it is raised. The preservation of the public peace, health and safety is indispensably necessary in and by any government worthy of the name. The *essential needs* of the State government are those things which are *indispensably necessary to enable the State to preserve the public peace, health or safety.* Sufficient revenue therefor is absolutely indispensable to the preservation of the public peace, health and safety.

In this State, and under our Constitution, to provide for the flow of revenue into the state treasury sufficient for the

essential needs of the State is solely a legislative function. At each regular session of the Legislature it is the *duty* of the Legislature to make certain that it has made adequate provision to meet the essential needs of the State for the ensuing biennium. It can do this only by levying a tax or taxes sufficient in amount for such needs of the State during the ensuing biennium. Once its biennial session is adjourned *sine die* the Legislature has no power of reconvention. It can only be again called into session by and at the will of the Chief Executive. It is, therefore, not only within the province, but it is also the duty of the Legislature to make certain before adjournment *sine die* that the revenue measure or measures which it enacts and which are required to provide for the essential needs of the State are finally enacted into effective law before such adjournment.

It is provided by Section 16 of Part Third, Article IV of the Constitution that "An emergency bill shall include only such measures as are immediately necessary for the preservation of the public peace, health or safety;". With respect to tax measures, *immediate necessity of the measure* does not require that the funds to be received under the tax measure or measures enacted must be required as available for use within the ninety-day period during which non-emergency bills may be suspended by the invoking of a referendum. The *real emergency* is the necessity that the act or acts providing revenue sufficient for the essential needs of the State for the ensuing biennium become law before the adjournment of the Legislature *sine die*. Either the necessity of finality of enactment of the bill into law, or the immediate availability of the revenue to be produced thereby, or both of them together may constitute an emergency under the foregoing provision of the Constitution, viz.: make the measure immediately necessary for the preservation of the public peace, health or safety. *A tax measure may be immediately necessary even though the funds to be raised thereby will not be required nor become available within the*

*ninety-day period during which non-emergency bills may be suspended by invoking a referendum.*

Again it must be remembered that it is not the form of tax which determines whether or not such tax can be an emergency measure, but it is whether or not it is necessary that such measure take effect before final adjournment of the Legislature because the proceeds thereof will be required for the essential needs of the State, to wit, for the preservation of the public peace, health or safety. If no tax to provide for the essential needs of the State could be enacted as an emergency measure, each and every tax measure enacted for such purpose *could* be suspended by invoking a referendum thereon. *The unrestrained possibility of such action could destroy the power of taxation.*

The great jurist Chief Justice Marshall, in the famous case of *McCulloch* v. *Maryland,* 4 Wheat. U. S. 316, 431, said, "the power to tax involves the power to destroy." While this statement in its literal sense may be subject to some doubt because of constitutional limitation of the power of taxation, history has shown that *lack of the power to tax destroys the efficiency of government. The power to tax is essential to government.* The flow of revenue into the treasury of the State is indispensably necessary to enable the State to function. One has but to read the history of this country under the Confederation and during the period subsequent to the Revolution prior to the adoption of the Federal Constitution and the acquisition of the power of taxation by the Congress, to see how true this statement is.

It is absolutely essential to the preservation of government itself that a Legislature which has no power of reconvention and which meets at stated intervals have the power to effectively enact revenue measures sufficient for the essential needs of the State until its reconvention. The unrestrained power to block such legislative action, if lodged in the hands of ten per centum of the number of qualified elec-

tors of a State who voted for governor in the last gubernatorial election would confer upon a small minority of the people the power to produce absolute chaos. If such power exists as to one form of tax measure it applies equally to all other forms of taxation. The successive invoking of referenda on all enacted tax measures, either by a single organized group, or by different groups to which the several tax bills were distasteful, could paralyze government.

From a breakdown or paralysis of government chaos is the inevitable result. This is no fanciful fear which we express. In these days of world unrest and the widespread breakdown of economic and governmental structures we are too prone to think and say it cannot happen here. The price of liberty is eternal vigilance. It is within the power, and is the duty as well as the function of this court to safeguard and protect within the borders of this State the fundamental principles of government vouchsafed to us by the State and Federal Constitutions. We should be ever alert to exercise our constitutional authority not only to uphold and maintain the Constitution against direct attack, but also to repel so far as lies within our power the first step toward an invasion of its guaranties.

This court has always accepted the challenge of this duty. It is in that spirit that we here decide the underlying issue of this case. The Constitution is designed not only to protect us from the invasion of our rights by others but even to protect us from ourselves. True it is that all rights of government are derived from the people. Among other things constitutions are adopted to safeguard the rights of the citizens from invasion not only by individuals but by government itself. Another purpose of a constitution is to insure the orderly conduct of government, and a proper discharge of the essential functions thereof.

Only in a constitutional manner may the people exercise the law making power reserved to themselves. Even the

people must not be allowed to interfere with the exercise by the Legislature of the law making power which has been conferred upon that branch of government by the Constitution. This court has never hesitated to exercise its power and authority to protect the individual from an unconstitutional invasion of his rights by the legislative branch of government. By the same token it is now our duty to prevent the people from interfering in an unconstitutional manner with the constitutional exercise by the Legislature of the powers conferred upon it by the Constitution. It is in the exercise of this latter duty that we decide the issue of this case and uphold the action of the Legislature.

If Chapter 250 providing for a sales and use tax could not be enacted as an emergency bill, neither could Chapter 213 providing for the levy of the customary State Tax be so enacted. In fact, if Chapter 250 could not be enacted as an emergency measure no tax required for the essential needs of the State could be so enacted. We are glad to announce that no interpretation of our Constitution which makes such result even remotely possible is required of us.

The present controversy is brought into sharp focus only because by Chapter 250 the State enters into a new and controversial field of taxation. The exercise by the Legislature of its fundamental power to enact a tax measure as emergency legislation, however, does not in any way nor to the slightest degree depend upon whether or not the tax measure enacted is in the customary or in a new and untried field of taxation. In truth the very fact that the issue is controversial, may be the controlling factor that requires a tax bill to be enacted as an emergency measure. It is the fundamental power and authority of the Legislature to preserve government which is here at stake, not merely whether or not we shall have a sales and use tax. It is for the Legislature to decide, within constitutional limitations, what form or forms of taxation are or may be necessary for the essen-

tial needs of the State. Except possibly as limited by the provision in the Constitution for initiated legislation, this question is exclusively within the legislative province.

If a referendum could be invoked upon a tax measure duly enacted as an emergency measure, the State would be without the funds to be produced thereby not only during the time of the suspension, but, if the act were rejected by the people, until a reconvention of the Legislature. Such reconvention could only come about on a special call by the Executive or the elapse of the constitutional time between the regular sessions thereof. However, tax measures like other measures enacted by the Legislature as emergency legislation may be ultimately repealed by the people either by the exercise of their elective franchise and the election of a Legislature responsive to their will, or by invoking the provisions for initiated legislation contained in the Constitution. It is far better that the people pay an unpopular and distasteful tax until such time as they can bring about its repeal, than it is to lodge in the hands of a small minority the absolute power to paralyze State government by the exercise of the unrestrained power of referendum applied to tax measures.

The present controversy is not merely whether or not we have a sales and use tax in the State of Maine, but it involves the important principle of whether our Constitution permits a small minority of citizens who are dissatisfied with the form of taxation enacted by the Legislature to absolutely paralyze State government.

We said in a recent *Opinion of the Justices,* 146 Me. 319, 323:

> "Established principles of constitutional construction require that the views of the framers be given great consideration, *Opinion of the Justices,* 68 Me., 582 at 585, and that whenever a constitutional provision may be considered ambiguous its:— 'in-

terpretation must be held to be settled by the contemporaneous construction, and the long course or practice in accordance therewith,' *State* v. *Longley*, 119 Me. 535 at 540."

The exercise by the Legislature of its fundamental power to enact a tax measure as emergency legislation is not at all novel in the legislative history of this State. The adoption of the constitutional amendment providing for the initiative and referendum was proclaimed by Governor Cobb October 30, 1908. The 74th Legislature, it being the first Legislature to meet thereafterwards, enacted the State Tax Act for the year 1909 as an emergency measure. See Private and Special Laws of 1909, Chapter 411. Since that time every Legislature to and including the 95th Legislature with the sole exception of the 75th Legislature, has enacted a State Tax Act as an emergency measure. To and including the 88th Legislature the State Tax for the first year of the biennium only was enacted as an emergency measure. However, since that time commencing with the 89th Legislature, to and including the 95th Legislature, the State Tax for both years of the biennium has been levied under a single bill. In every instance such bill has been enacted as an emergency measure. The fact that these successive Legislatures during the entire existence of the constitutional provisions authorizing referenda and providing for the enactment of emergency legislation have enacted tax bills as emergency measures, though not conclusive as to the power of the Legislature so to do, demonstrates beyond question that this court by this decision is not sanctioning the embarkation by the Legislature upon any new or uncharted legislative sea. Such action on the part of these successive Legislatures affords strong evidence of a contemporary and continuing interpretation of the Constitution as conferring the power to enact tax acts as emergency measures. Such action serves to reinforce the interpretation of the Constitution which we reach independently thereof.

We hold that a tax measure to provide funds necessary for the essential needs of the State government can be an emergency measure, and if it be constitutionally enacted as such, it will take effect immediately upon its approval by the governor, or its final passage over the veto of the governor. In either case it will not be subject to a referendum.

The Legislature, in the emergency preamble here in question, declared the existence of a fact which we hold could, and which it alleged did constitute an emergency, and that the measure, because of such emergency, was immediately necessary for the preservation of the public peace, health and safety. These determinations by the Legislature being determinations of fact and not of law, and being determinations within its exclusive province, are not subject to review by this court.

Our decision that an emergency together with the facts constituting such emergency are sufficiently expressed in the preamble of Chapter 250, the same having been enacted as an emergency act, is decisive of the case. The act is not subject to constitutional referendum, and the Secretary of State should not receive the petitions invoking the same. Chapter 250 took effect when approved by the governor. This determination by us fully disposes of the case. Our decision being on this ground, it renders all other contentions of the petitioners and the respondent not heretofore noted and specifically disposed of in this opinion immaterial to a decision of the cause. The failure on our part to decide or discuss them, however, is no intimation of our views thereon. The exceptions must be overruled.

*Exceptions overruled.*