**LEAGUE OF WOMEN VOTERS et al.**

**v.**

**SECRETARY OF STATE et al.**

Supreme Judicial Court of Maine.

Argued Sept. 3, 1996.

Decided Sept. 19, 1996.

Stephen E.F. Langsdorf (orally), Anne Skopp, Preti, Flaherty, Beliveau & Pachios, Augusta, for Appellants.

Andrew Ketterer, Attorney General, Thomas D. Warren (orally), Assistant Attorney General, Augusta, and John Rich (orally), and William J. Sheils, Perkins, Thompson, Hinckley & Keddy, Portland, Samuel W. Lanham, Jr. (orally), Cuddy & Lanham, Bangor, for Appellees.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

In January of 1993, elector petitions in support of the imposition of term limitations on the members of the Maine Legislature and several executive officers were submitted to the Legislature. The Legislature rejected the measure, and pursuant to the citizen initiative procedure of the Maine Constitution,[1] the initiative measure was submitted to the electors. On November 2, 1993, the people of Maine voted to enact the term limitations initiative into law. The Term Limitation Act of 1993 was codified as 21–A M.R.S.A. §§ 551–554 (Supp.1995).

In February and March of 1996, several incumbent members of the Maine House of Representatives attempted to file primary petitions as required by 21–A M.R.S.A. § 334 (Supp.1995)[2] in order to appear on the June 1996 primary ballot in advance of November elections for the 118th Legislature. Secretary of State G. William Diamond, one of the defendants in this action, rejected the petitions of four incumbent legislators, citing the provision of the Term Limitation Act that bars members of the House of Representatives from serving more than four consecutive terms. 21–A M.R.S.A. § 553.

On February 20, 1996, the incumbent legislators,[3] along with representatives of certain groups of voters in the state of Maine[4] and several individual voters, filed a four count complaint in the United States District Court for the District of Maine, challenging the constitutionality of the Term Limitation Act. On a motion of defendants Diamond and Attorney General Andrew Ketterer the District Court (*Brody, J.*), pursuant to 4 M.R.S.A. § 57 (1989) and M.R.Civ.P. 76B, certified the following two questions:

1. Under the Maine Constitution, may limits on the number of consecutive terms that may be served by Maine legislators be enacted by legislation or do such limits require an amendment to the Maine Constitution?

---

**1.** Me. Const. art. IV, pt. 3, § 18.

**2.** 21–A M.R.S.A. § 334 provides:
  A candidate for nomination by primary election must file a primary position and consent under sections 335 and 336. The candidate must be enrolled, on or before March 15th, in the party named in the petition and must be eligible to file a petition as a candidate for nomination by primary election under section 144, subsection 3. The registrar in the candidate's municipality of residence must certify to that fact upon the petition.

**3.** State Representatives Herbert Adams and Roger Pouliot were the original legislators to challenge the Term Limitation Act. The U.S. District Court on April 24, 1996, granted a motion to add Representative Herbert Clark as a plaintiff.

**4.** League of Women Voters and the Maine Council of Senior Citizens.

2. If the answer to question 1 is that such limits may be enacted by legislation, do the provisions of 21–A M.R.S.A. §§ 553–54 disqualify legislators who are currently serving the last of four or more consecutive terms from appearing on the ballot in the 1996 election and from serving in the legislature during 1997 and 1998?

Because there is no dispute as to the material facts at issue, and because our answer to the certified questions will be determinative of those portions of the pending matter that have been certified to us, the statutory requirements for our acceptance of these questions have been met. Finding that the exercise of our jurisdiction is proper, we now respond to each question.[5]

### Constitutionality of Popularly Initiated Term Limits

The power granted to the Legislature of the State of Maine is plenary and subject only to those limitations placed on it by the Maine and United States Constitutions. "The Legislature, with the exceptions hereinafter stated, shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to the Constitution, nor to that of the United States." Me.Const. art. IV, pt. 3, § 1. The power of the Maine Legislature is distinct from that of our nation's Congress, which enjoys only those powers granted to it by the United States Constitution, such that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

Legislative power in this State is defined by limitation, not by grant. "The Legislature of Maine may enact any law of any character or on any subject unless it is prohibited, either in express terms or by necessary implication, by the Constitution of the United States or the Constitution of this State." *Baxter v. Waterville Sewerage Dist.*, 146 Me. 211, 215, 79 A.2d 585, 588 (1951). *See also Ace Tire Co. v. Municipal Officers of Waterville*, 302 A.2d 90, 96 (Me.1973) (legislature has plenary power "except as it may have been circumscribed expressly or inferentially by the constitution of the state or nation"); *Town of Warren v. Norwood*, 138 Me. 180, 192–93, 24 A.2d 229, 235 (1941) (power of legislature is "absolute and all-embracing except as expressly or by necessary implication restricted by the Constitution").

Our Constitution gives the people of this State the power to enact legislation through the initiative process. Me. Const. art. IV, pt. 3, § 18. When the people enact legislation by popular vote, we construe the citizen initiative provisions of the Maine Constitution liberally in order to facilitate the people's exercise of their sovereign power to legislate. *Allen v. Quinn*, 459 A.2d 1098, 1102–03 (Me.1983). *See also Opinion of the Justices*, 275 A.2d 800, 803 (Me.1971) ("Our primary consideration, therefore, must be that by the initiative amendment the people, as sovereign, have retaken unto themselves legislative power and that a particular undertaking by them shall be liberally construed to effectuate the purpose."). The exercise of initiative power by the people is simply a popular means of exercising the plenary legislative power "to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State...." Me. Const. art. IV, pt. 3, § 1.

Since by the initiative process the people of Maine are exercising their legislative power, the constitutional validity of a citizen initiative is evaluated under the ordinary rules of statutory construction. *Opinion of the Justices*, 460 A.2d 1341, 1345 (Me. 1982). Thus, the Term Limitation Act of 1993 carries a heavy presumption of constitutionality, and the burden of overcoming that presumption rests on the challenger. *Common Cause v. State*, 455 A.2d 1, 17 (Me.1983). "Before legislation may be declared in violation of the Constitution, that fact must be established to such a degree as to leave no

**5.** Appellants do not challenge the provisions of 21–A M.R.S.A. §§ 551–554 that impose term limits on the executive offices of Secretary of State, Treasurer, and Attorney General. We therefore confine this opinion to those provisions of the Term Limitation Act that limit the number of consecutive terms that may be served by state senators and representatives.

room for reasonable doubt." *Orono–Veazie Water Dist. v. Penobscot County Water Co.,* 348 A.2d 249, 253 (Me.1975) (citing *York Harbor Village Corp. v. Libby,* 126 Me. 537, 549, 140 A. 382 (1928)). We have had occasion to find that the people of Maine have overstepped the limits of their constitutionally granted powers in enacting initiative measures. *See, e.g., Morris v. Goss,* 147 Me. 89, 93, 106–08, 83 A.2d 556 (1951) (revocation of emergency tax laws enacted by the legislature); *Moulton v. Scully,* 111 Me. 428, 449–51, 89 A. 944 (1914) (removal of public officers). The question before us relates to a proper exercise by the people of Maine of their legislative power.

Term limits have in the past been placed on executive officers by constitutional amendment in Maine. *See, e.g.,* Me. Const. art. V, pt. 1, § 2 (governor); Me. Const. 1819 art. V, pt. 4, § 1 (state treasurer) (repealed in 1951 by Amendment LXX). The decision to proceed by constitutional amendment in enacting term limits for the governor and the treasurer does not provide compelling evidence that the framers of our Constitution intended amendment of that document to be the only means of imposing qualifications on those who would serve in the legislature.[6] In fact, the first legislature to convene after the ratification of the new Constitution enacted two measures that served to prevent certain persons from taking state office, including legislators. One of the two, concerning dueling, is still in effect. Laws 1821, ch. II, § 7, now codified as 17 M.R.S.A. § 1351 (1983) ("Whoever fights a duel with deadly weapons or is present thereat as aid, second, surgeon or as advising, encouraging or promoting it,

[shall] be incapable of holding any office or place of honor, trust or profit for 20 years after conviction"). The second law was not repealed until the codification of our modern penal code in 1976. Laws 1821, ch. XXI, § 2, codified as 17 M.R.S.A. § 601, repealed effective May 1, 1976 (anyone convicted of bribery shall be "forever after incapable of sustaining any office or place of trust within this State").

The plaintiffs suggest that we look to the ruling of the Supreme Court of the United States in *U.S. Term Limits, Inc. v. Thornton,* —— U.S. ——, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995), and apply to our own Constitution the Court's holding that the United States Constitution is the exclusive source of qualifications for legislative office. We decline the invitation. The decision in *Thornton* concerned the particular history of the federal constitution, not that of our state, and we find no evidence compelling an application of the same analysis to both documents.[7] The Supreme Court of the United States concluded that the Framers wanted to ensure that elections for federal office would not take disparate forms within the several states. "Allowing individual States to adopt their own qualifications for congressional service would be inconsistent with the Framers' vision of a uniform National Legislature representing the people of the United States." *Thornton,* —— U.S. at ——, 115 S.Ct. at 1844, 131 L.Ed.2d at 888. No such need for uniformity is present in our elections, and the reasoning of the *Thornton* Court is inapplicable here. *Morris v. Goss,* 147 Me. at 97, 83 A.2d at 561 (1951) ("It is to be remembered

---

**6.** *But cf. Opinion of the Justices,* 343 A.2d 196, 203 (Me.1975) ("When the Constitution fixes the tenure of a civil office, it is beyond the power of the Legislature to affect the tenure. Persons holding such constitutional offices, therefore, may be removed only by methods authorized by the Constitution itself."); *Ross v. Hanson,* 227 A.2d 606, 611 (Me.1975) ("We cannot, however, escape the conclusion that the 1965 Act purports to change the right of the Secretary of State under the Constitution to appoint 'his deputy'; and thus it violates the plain terms of the Constitution creating both offices.").

**7.** The *Thornton* Court cited with approval the conclusion it reached in *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491

(1969), that the Framers intended that their delineation in the Constitution of qualifications for Congress could not be changed by the legislature. "The qualifications of the persons who may choose or be chosen, as has been remarked upon other occasions, are defined and fixed in the Constitution, and are unalterable by the legislature." *Powell,* 395 U.S. at 539, 89 S.Ct. at 1973 (quoting Hamilton, *The Federalist Papers* No. 60 at 371). We find nothing in the constitutional debates in Maine to suggest an intent on the part of the framers to make constitutional amendment the sole means of enacting qualifications for legislative office. See *Debates and Journal of the Constitutional Convention of the State of Maine, 1819–1820* (1894).

that we are now interpreting our own Constitution. In so doing, we are not bound by any of the interpretations which others may have made of their own constitutions. Nor do we follow such interpretations except to the extent that the reasoning on which they rest is convincing to us when applied to our own Constitution.").[8]

We therefore answer Question One by concluding that limits on the number of consecutive terms that may be served by Maine legislators may be enacted by legislation.

## Effective Date of the Term Limitation Act of 1993

■ Also presented to us is the question of the effective date of 21–A M.R.S.A. §§ 551–554 (Supp.1995). Entitled "Limitation on Terms," section 553 lists the number of terms that each officeholder may serve before being subjected to the provisions of the Act.[9] The last sentence of section 553 provides as follows: "This section applies to terms of office that begin on or after December 3, 1996." Read in isolation, this sentence could be construed in two possible ways. First, it could apply to persons already holding office, so the terms already served by that date are to be counted towards the limit outlined for each office. A second possible explanation is that the sentence means that terms beginning after December 3, 1996, are to be the first terms subjected to the limitations of section 553. It is this latter explanation that is urged upon us by the plaintiffs. We reject their interpretation.

■ "It is fundamental that we look to the purpose for which a law is enacted, and that we avoid a construction which leads to a

result clearly not within the contemplation of the lawmaking body." *Greaves v. Houlton Water Co.*, 143 Me. 207, 212, 59 A.2d 217, 219 (1948). The "Transition Statement" included in the Historical and Statutory Notes attached to 21–A M.R.S.A. § 553 states that the provisions of the Act prevent any legislator who has served the requisite number of terms by December 3, 1996, from serving in the 118th Legislature:

A person elected or appointed to an office subject to the provisions of this Act who is disqualified from service by this Act may complete that person's term of office if the term commences on or before December 2, 1996. The limitations imposed by this Act apply to the terms of office served by persons elected to serve in or persons elected to serve by the First Regular Session of the 118th Legislature and to all terms of office served by persons elected to serve thereafter.

This Transition Statement was included in the referendum sent to the electors on November 2, 1993, after the Legislature declined to enact the initiated petition. 1993 I.B. 1, § 2. The Transition Statement serves to "grandfather" any office holder who is in the middle of a term when the Act takes effect on December 3, 1996. Such a provision would be unnecessary and illogical if, as the plaintiffs contend, the first state legislators would not be disqualified pursuant to terms of the Act until the year 2004.

■ Additional evidence in support of our interpretation is found in the Attorney General's explanatory statement that was attached to the referendum question pursuant to 1 M.R.S.A. § 353 (1989).[10] That explana-

---

8. Other state courts addressing similar issues have found determinative the fact that the framers of their respective constitutions phrased legislative qualifications negatively, connoting exclusivity. See generally Annotation, *Legislative Power to Prescribe Qualifications for or Conditions to Constitutional Office*, 34 A.L.R.2d 155, 174–75 (1962, Later Case Service 1989, and Supp.1996). Our "qualifications clause" for service in the Maine House of Representatives, for example, is negatively phrased. "No person shall be a member of the House of Representatives...." *Me. Const. art. IV, pt. 1, § 4.* In the absence of any evidence of intent by the framers to render these qualifications exclusive, we de-

cline to find the chosen phraseology of the amendment determinative.

9. "State Senate. A person may not serve more than 4 consecutive terms as a state Senator." 21–A M.R.S.A. § 553(1).

"State Representative. A person may not serve more than 4 consecutive terms as a member of the state House of Representatives." 21–A M.R.S.A. § 553(2).

10. "The Attorney General shall prepare a brief explanatory statement which shall fairly describe the intent and content of each constitutional resolution or statewide referendum that may be presented to the people...."

tion, which was put before the electors who enacted the Term Limitation Act, stated: "These limitations would apply to the general election of 1996; meaning that any person who has served the requisite number of terms by that time would be disqualified from seeking reelection or reappointment in that year." The Attorney General's referendum explanation is a useful guide for interpreting voter enactments. "In the absence of a challenge to the Attorney General's official explanation of the amendment, we assume that the voters intended to adopt the constitutional amendment on the terms in which it was presented to them. . . ." *State v. Brown*, 571 A.2d 816, 818 (Me.1990). The electors of the state of Maine, exercising the legislative power granted to them by the Constitution, had before them in the referendum of November 2, 1993, the proposed statute in the exact language that was codified as 21–A M.R.S.A. §§ 551–554. They also had the explanation of the Attorney General and the Transition Statement, all of which when read in unison provide ample evidence in support of our conclusion.

We answer Question 2 in the affirmative.

All concurring.