**OPINION OF THE JUSTICES of the Supreme Judicial Court given under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the Senate in an Order Dated Feb. 1, 1977.

Answered March 8, 1977.

---

656

657

659

**662**

ANSWERS OF THE JUSTICES

To the Honorable Senate of the State of Maine:

. We, the undersigned Justices of the Supreme Judicial Court, have the honor to submit answers to the questions propounded by the Senate on February 1, 1977. We do this, in our opinion, agreeably to the provisions of Article VI, Section 3 of the Constitution of Maine.

■ Whenever a question is asked of us by the Governor, the Senate, or the House of Representatives, we must first determine whether the question asked and the occasion is one to which we are constitutionally authorized to respond, i. e., "important question of law, and upon solemn occasion." ·

That the questions asked are important in a constitutional sense is self-evident.

■ Ordinarily, no solemn occasion can be said to exist whenever the subject matter of the question is pending in committee and not yet before the inquiring branch of the Legislature. *Opinion of the Justices,* Me., 355 A.2d 341, 389 (1976). As we there informed the Senate, the status of a bill in committee is not alone conclusive. We do not say that the Justices may never answer questions put to them by a branch of the Legislature concerning proposed legislation which has not yet been reported out of committee.

■ We consider the questions now before us, though they concern proposed legislation still in committee, to present a situation not unlike that to which we addressed ourselves in *Opinion of the Justices*, Me., 338 A.2d 802 (1975).

Here, as there, the Legislature is faced with a problem of overwhelming magnitude.

Much of the legislative work to overcome this problem must necessarily be undertaken in committee.

Since the whole question relates to a major source of tax revenue, it is of great immediate public concern.

It seems reasonably certain that whatever happens in committee to the legislative documents to which the questions relate in part, the Legislature during this session will be directly involved with the issues raised by the questions about which our opinion is sought.

· We conclude a solemn occasion exists.

Before undertaking to give specific answers to the questions asked, we consider it helpful in our analysis of the issues presented to recite the factual framework in which the occasion for the requested opinion arose.

The 108th Legislature has before it a legally sufficient initiative which has as its objective the repeal of the uniform property tax and a return to the municipalities of authority to set the property tax rate for public school purposes.

Also pending before the 108th Legislature is the Governor's proposed budget for fiscal year 1978–79, which budget includes recommendations regarding funding for educational programs.

Also pending before the 108th Legislature, now in committee, are L.D. 16, entitled "AN ACT to Provide that the Uniform Property Tax Rate shall be Established in Conformity with Statutory Limits on Educational Funding;" L.D. 193, entitled "AN ACT to Reduce the Uniform Property Tax by 1¼ Mills;" and L.D. 91, entitled "AN ACT to Ensure that the Uniform Property Tax Rate Conforms to Limits on Educational Funding Established by Statute." ·All the above legislative documents carry emergency preambles.

Obviously, any amendment to the uniform property tax which would affect proceeds of the uniform property tax in fiscal year 1978–79 must be considered before any budget for such fiscal year can be enacted.

■ Although in some jurisdictions which have adopted initiative and referendum, specific provision is to be found excluding revenue legislation as the subject of initiative and referendum, we are satis-

fied from a historical analysis of Amendment XXXI to the Constitution of Maine that initiative can properly be used when the subject matter is revenue legislation.[1]

■ QUESTION #1: If the bill contained in the initiative petition (Exhibit D) is either enacted by the Legislature so that it is effective after July 1, 1977, or passed by the electorate and proclaimed by the Governor so that it is effective after July 1, 1977, will the initiative measure repeal the uniform property tax for the fiscal year beginning July 1, 1977 and terminating June 30, 1978?

ANSWER: We answer in the negative.

By the express terms of 36 M.R.S.A. § 452 it is clear that the liability of the municipality for the uniform property tax becomes fixed on July 1 annually for the fiscal year ending June 30 of the following calendar year. It is likewise clear that the procedure employed contemplates that the tax for which each municipality is liable under the formula described in § 451(3) must be "cranked into" the municipality's taxing process by adding "the amount of such tax to the amount of county and municipal taxes to be by them assessed in their municipalities."

The issue generated by Question #1 is whether Exhibit D, if enacted or approved so as to be effective after July 1, 1977, will negate the liability for payment of the uniform property tax which attaches as of July 1, 1977.

■■ Exhibit D contains nothing purporting to give it retroactive effect. It is the well settled rule in Maine that statutes are to be considered prospective in their application in the absence of language showing a contrary intent. *See Miller v. Fallon,* 134 Me. 145, 13 A. 416 (1936). In general, retroactivity in legislation is

disfavored, although it is now established that a tax statute is not unconstitutional merely because it is retroactive in effect. *See Tiedemann v. Johnson,* Me., 316 A.2d 359, 365 (1974), and cases cited therein.

■ The power of the Legislature, and likewise the power of the people in initiating legislation, to enact retroactive measures is limited. For example, in Maine the Legislature may enact statutes retroactively affecting remedies but not substantive rights. *See generally, Morris v. Goss,* 147 Me. 89, 83 A.2d 556 (1951).

A subsidiary issue which is generated by Question #1 merits some discussion. We have expressed the opinion that Exhibit D will not retroactively repeal the uniform property tax for the fiscal year 1977–78 if it is enacted or approved sometime after July 1, 1977. It might be argued, however, that the State Tax Assessor's power under the second paragraph of 36 M.R.S.A. § 452 to direct the collection of such tax from the municipal authorities will cease as of the effective date of Exhibit D if it is enacted or approved.

We reject this contention.

We have said that Exhibit D, if approved or enacted, will be applied only prospectively; that is, it will repeal the uniform property tax for the fiscal years beginning 1978–79. In our opinion, it would be completely illogical to hold that one section of the bill contained in Exhibit D, that is, the repeal of the actual assessment of the tax, will not be effective to abolish the tax for which the wheels of the collection process are already in motion, while another section, i. e., the repeal of the power to certify the amount to be collected, will have immediate application. It is our opinion that the power to direct collection of the tax assessed as of July 1, 1977 survives the enactment or approval of Exhibit

---

1. An excellent history of Amendment XXXI may be found in: *Black, Maine's Experience with the Initiative and Referendum,* 43 Annals 159 (1912); Pelletier, *The Initiative and Referendum in Maine,* Bowdoin College Bulletin 7 (1951); Address of Governor Cobb to the 73rd Legislature, Acts and Re-

solves of Maine 1907, 1555, 1562; Address of Governor Fernald to the 74th Legislature, Acts and Resolves of Maine 1909, 1436, 1450–51. *See generally,* Galbreath, *Provisions for State-Wide Initiative and Referendum,* 43 Annals 81 (1912).

D until July 1, 1978. Hence, we conclude that even if Exhibit D is enacted or approved, the State Tax Assessor will retain the power to direct the collection of the uniform property tax from the municipalities for the entire fiscal year 1977–78.

■ QUESTION #2: Will Legislative Document 16 (Exhibit A) or Legislative Document 91 (Exhibit C), if enacted with an effective date prior to July 1, 1977, alter the mill rate of the uniform property tax, (a) for the fiscal year beginning July 1, 1977 and terminating June 30, 1978 and (b) for any subsequent fiscal year?

ANSWER: We answer in the affirmative as to part (a).

Legislative Document 16 (Exhibit A) and Legislative Document 91 (Exhibit C) both include an emergency preamble and an emergency clause. It appears that in the event either of these legislative documents is enacted into law, the bill would be emergency legislation as defined in Article IV, Part Third, § 16 of the Maine Constitution.

The importance of emergency legislation and the need that it be insulated from premature or ill-conceived disruption is recognized in § 17 of Part Third, Article IV of our Constitution. This section exempts emergency legislation from the referendum process—a process which suspends the effectiveness of laws until the law is ratified by popular election. This constitutional exemption from suspension is particularly important in the area of emergency tax legislation. *Morris v. Goss*, supra.

The people may use the initiative process as provided by Article IV, Part Third, § 18 to challenge emergency legislation. But

even this section refers only to the people's power to *repeal* emergency legislation. No mention is made of their power to *suspend* existing legislation. To read such a power into section 18 would be to undercut the policies expressly recognized in sections 16 and 17.

There is no inherent conflict between the power of the Legislature to enact immediately effective emergency legislation and the power of the people to repeal that legislation through the initiative process. *Cf. Johnson v. Diefendorf*, 56 Idaho 620, 57 P.2d 1068 (1936).

■ The existence of the pending *initiative* does not vitiate the constitutional provision of immediate effectiveness of emergency legislation. Likewise, it should be noted that if either of these legislative documents becomes law, the right of the people to have the initiated legislation submitted to a vote of the people in accordance with Article IV, Part Third, § 18 is not frustrated.

Legislative Document 16 or Legislative Document 91 will become effective, as written,[2] when enacted.

We respectfully decline to answer as to part (b) because we consider the issue there posed is not appropriate for consideration by the Legislature at this first regular session. *See* footnote 2.

QUESTION #3: Will House Paper 205 (Exhibit B), if enacted with an effective date prior to July 1, 1977, alter the mill rate of the uniform property tax for the year beginning July 1, 1977 and terminating June 30, 1978?

ANSWER: We answer in the affirmative.

2. As presently written, both Exhibit A (L.D. 16) and Exhibit C (L.D. 91) make it impossible for the Legislature to set a tax rate for fiscal year 1977–78. Since ,the Legislature *must set* the new rate "prior to April 1st" of each year, and since under the language of both legislative documents the new method of establishing a rate *may not be used* until *after* June 30 of 1977, ,then no rate can be set until "prior to April 1st" 1978

when the rate for fiscal year 1978–79 is established.

Likewise, we point out that 20 M.R.S.A. § 3747 as presently written does not provide a formula for determining *a tax rate*. That subsection *merely prohibits the establishment of a rate* which will produce an amount exceeding 50% of the basic education allocation. It does not by its terms establish what particular percentage *under 50%* shall be produced by the tax rate.

For the reasons set out in our answer to Question #2, if House Paper 205 (Exhibit B) is enacted as emergency legislation, it will become effective when enacted. It will affect the mill rate for fiscal 1977 only if it is enacted before April 1, 1977, as the proposed legislation does not purport to amend that part of 36 M.R.S.A. § 451(2) which requires the mill rate to be set before April 1 of the following fiscal year.

Dated at Portland, Maine, this 8th day of March, 1977.

Respectfully submitted:

ARMAND A. DUFRESNE, Jr.
CHARLES A. POMEROY
SIDNEY W. WERNICK
JAMES P. ARCHIBALD
THOMAS E. DELAHANTY
EDWARD S. GODFREY.