**OPINION OF THE JUSTICES of the Supreme Judicial Court given under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

July 24, 1996.

## QUESTIONS PROPOUNDED BY THE GOVERNOR IN A COMMUNICATION DATED JULY 8, 1996

To the Honorable Justices of the Maine Supreme Judicial Court:

This requests the advice of the Justices of the Maine Supreme Judicial Court pursuant to Article VI, § 3 of the Maine Constitution on several important issues of law. I require your guidance on the questions listed below in order to determine whether to convene the Legislature in Special Session under Article V, Part 1, Section 13 of the Maine Constitution, and in order to assure that any legislation I submit to such a Special Session complies with constitutional requirements.

I believe that the questions outlined below present important questions of law presented in the context of a solemn occasion, with the "live gravity" required by the Court prior to considering such requests for advisory opinions.

The facts giving rise to this solemn occasion are as follows. In the last legislative session, citizen-initiated legislation, "An Act to Promote Forest Rehabilitation and Eliminate Clearcutting" was presented to the Legislature by petition under the provisions of Article IV, Part 3, § 18. Considering the measure as LD 1819, the Legislature voted that the legislation ought not to pass, resulting in automatic submission of the measure to the electors for a referendum vote at the

November 1996 election. A copy of the official February 22, 1996 certification by the Secretary of State of the legislation accompanying the citizen petition to the Legislature is attached for your convenience. [not included herein]

I would like to convene the Legislature to consider a bill dealing with some of the same issues treated in LD 1819. However, I would call the Legislature into Special Session only if they have the authority to consider the type of legislation described, and wish to avoid the considerable expense and disruption entailed in a Special Session for all concerned absent such authority. Thus, the authority of the Legislature to consider the measures described below constitutes the important question of law and solemn occasion anticipated by Article VI, § 3.

Additional important questions of law are presented by my need for your guidance to ensure that any legislation I might submit to the Legislature is fully compatible with the protections afforded citizen-initiated legislation under Article IV, Part 3, § 18 of the Maine Constitution. Given the absence of controlling case law or prior advisory opinions from the Maine Supreme Judicial Court on these issues, the importance of preserving the integrity of the constitutional provisions controlling the citizen initiated legislation, and the need to resolve these matters well in advance of the November election in order to assure the orderly administration of elections, we believe that the solemn occasion requirement has been met.

Therefore, I respectfully request your opinion on the following questions of law:

### Question 1. Authority of Legislature to Enact Competing Measure

Does the Maine Legislature have the authority to enact a true "competing measure" at a future Special Session and refer that competing measure for consideration by the electors in the November 1996 general election under Article IV, Part 3, § 18. Please assume that the Legislature would act early enough for all necessary ballot printing and distribution by the Secretary of State.

As we understand it, the Maine Constitution places no time restriction on the continu-

ing jurisdiction of the Legislature to enact such a competing measure. Article IV, Part 3, § 18(2) provides in relevant part:

> The [citizen-initiated] measure thus proposed, unless enacted without changes by the Legislature *at the session* at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both. (emphasis added)

A facial reading of this provision indicates that the Legislature must act on the citizen-initiated petition "at the session" at which it is presented, but it does not appear to restrict the Legislature's ability to craft a competing measure to the same session. Instead the provision simply directs the Legislature to submit the competing measure to the electors in time for the people to choose between the competing measures or reject both. Properly construed, we understand that this enables the Legislature to enact a competing measure at a subsequent Special Session within the same biennial session of that Legislature. This interpretation is supported by the broad language vesting all legislative power in the Legislature's two Houses in Article IV, Part First, § 1, subject only to the people's reserved powers.

Any contrary interpretation restricting the Legislature's authority to enact a competing measure at a subsequent Special Session would create a dangerous restriction on the power of the Legislature to respond to a threat to public health, safety and welfare by crafting a measure better adapted to intervening changes in circumstance.

### Question 2. Legislative Authority to Enact Non–Competing Measure

Our second inquiry is whether the Legislature may convene in Special Session to enact legislation dealing with the same subject matter treated in the referendum, to become effective only in the event that the referendum fails, without referring that "fade-away" measure as a competing measure to the electors. Please assume that this legislation would contain provisions inconsistent with

those of LD 1819. The legislation would not become effective until after the election in November, 1996.

It is our understanding that so long as the "fade-away" legislation would not be effective except in the event of the failure of the referendum, the fade-away legislation would not qualify as a "competing measure." Given that the two bills cannot possibly be effective at the same time, it does not appear that the measures cannot reasonably be construed as "competing."

We understand this interpretation to be consistent with the ruling of the Maine Law Court in *Farris ex rel Dorsky v. Goss*, 143 Me. 227, 60 A.2d 908 (1948) and *McCaffrey v. Gartley*, 377 A.2d 1367 (Me.1977) that competing measures are those dealing broadly with the same general subject matter in "a manner inconsistent with the initiated measure so that the two cannot stand together." As in the *McCaffrey* case, the Legislature simply retains the power to act on legislation that would be effective in a different time-frame than the referendum legislation. Here, the fade-away legislation and the referendum can stand together, as the measure enacted at special session will never become effective if the citizens pass the referendum. Therefore, the two measures could never "compete," given that the fade-away option is carefully designed to yield before a favorable vote of the electors on the referendum. We need you to confirm that the "fade-away" legislation, to be effective if and only if the referendum fails, would not constitute a "competing measure."

### Question 3. Authority of Legislature to Enact Emergency Legislation

Our third inquiry is whether the Legislature may convene in Special Session to enact emergency legislation without referring that emergency legislation to the electors as a competing measure. The legislation would be effective prior to the November 1996 election and would contain provisions inconsistent with LD 1819. However, the emergency legislation would have an automatic repeal clause that would provide for repeal of the emergency legislation without further legislative action on or before March 31 (i.e. prior

to the April 1, 1997 effective date of LD 1819) in the event the referendum is passed by the electors in the November 1996 election.

Given the Law Court's decision in *McCaffrey v. Gartley*, 377 A.2d 1367 (Me.1977), we understand that such emergency legislation power is retained by the Legislature under Article IV, Part 3, § 16 even in the face of a pending referendum on citizen-initiated legislation. However, we are concerned about the mechanics of reconciling the inconsistent provisions of the emergency legislation and LD 1819 in the event that the electors enact LD 1819. Therefore, we seek your opinion on the constitutionality of such emergency legislation with an automatic repeal clause, to be triggered in the event the electors pass LD 1819 in the November referendum.

We appreciate your assistance on these vital questions.

Sincerely,

/s/ Angus S. King, Jr.
Angus S. King, Jr.
Governor

### ANSWERS OF THE JUSTICES

To His Excellency, Angus S. King, Jr., Governor of Maine:

In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following responses to the questions you propounded on July 8, 1996.

■ Advisory opinions provided by the individual justices pursuant to article VI, section 3 are not binding decisions of the Supreme Judicial Court sitting as the Law Court. Such opinions are expressed "without the benefit of full factual development, oral argument, or full briefing by all interested parties." *Opinion of the Justices,* 673 A.2d 693, 695 (Me.1996). Moreover, the justices are permitted to respond to a request for an advisory opinion only "upon important questions of law, and upon solemn occasions." ME. CONST. art. VI, § 3 (Supp.1995).

■ Question 1 asks "Does the Maine Legislature have the authority to enact a true 'competing measure' at a future Special Session and refer that competing measure for consideration by the electors in the November 1996 general election under Article IV, Part 3, § 18"?

■ Because the Governor may, pursuant to article V, part 1, section 13, convene the Legislature and, pursuant to article V, part 1, section 9, recommend to the Legislature such measures as he may deem expedient, and because the Governor wishes to call the Legislature into a special session only if the Legislature can consider enacting an "amended form, substitute, or recommendation" relating to citizen-initiated legislation not enacted by the Legislature at the general session at which the initiated measure was presented, we conclude that the question of law presented is important and that there does exist a solemn occasion as required by article VI, section 3.

In 1947 a law relating to labor relations was submitted to the Legislature by the initiative process pursuant to what is now article IV, part 3, section 18. The Legislature did not enact the initiated measure without change and it was scheduled to be submitted to the electors. The Legislature did, however, enact without provision for a referendum vote a separate measure, later determined by the Law Court to be a "substitute" for the initiated measure. In order to preserve the integrity of the initiative process and to protect the right of the people to enact legislation and to approve or disapprove acts of the Legislature, the Law Court affirmed an order of the Superior Court that required the Secretary of State to submit the substitute measure to the voters along with the initiated measure. *Farris ex rel. Dorsky v. Goss,* 143 Me. 227, 60 A.2d 908 (1948). The Court stated that the right of the people "is an absolute one and cannot be abridged directly or indirectly by any action of the Legislature." *Id.* at 231, 60 A.2d 908. Moreover, the Court disregarded legislative characterization of the substitute measure and looked to "what it is in fact." *Id.* at 232, 60 A.2d 908. Because the bill dealt with the same general subject matter in a manner inconsistent with the initiated measure, failure to submit the substitute to the voters would

abridge their constitutional right. *Id.* at 234, 60 A.2d 908.

Nothing in the *Farris* opinion and nothing in section 18 limits the authority of the Legislature to enact a substitute measure at a special session. The Law Court has stated that "[t]he powers of the Legislature in matters of legislation, broadly speaking are absolute, except as restricted and limited by the Constitution." *Sawyer v. Gilmore,* 109 Me. 169, 180, 83 A. 673 (1912). Unless, therefore, legislative action at a special session directly or indirectly abridges the right of the people provided in section 18, we see no reason why the Legislature cannot consider a substitute measure. We are asked to assume that the legislative action would not interfere with the orderly printing and distribution of ballots. On that assumption, we fail to see any adverse effect on the free choice of the electorate.

We answer Question 1 in the affirmative.

■ Question 2 asks "whether the Legislature may convene in Special Session to enact legislation dealing with the same subject matter treated in the [initiated measure], to become effective only in the event that the referendum fails, without referring that 'fade-away' measure as a competing measure to the electors."

We are asked to assume that such legislation would contain provisions inconsistent with the initiated measure and would not become effective until after the November 1996 election, and then only if the initiated measure failed of adoption. The question implies that because the two measures would not be in effect at the same time, they would not be inconsistent in the sense used by the Court in *Farris.* We conclude, however, that they would be competing measures and that the logic of *Farris* would require both measures to be submitted to a referendum vote.

Article IV, part 3, section 18(2) requires the submission of competing bills to the voters "in such manner that the people can choose between the competing measures or reject both." In every practical sense, the "fade-away" measure would be competing for support against the initiated measure. The "fade-away" measure would furnish argument in support of a no vote on the initiated measure. As we stated in *Farris:*

> Neither by action nor by inaction can the Legislature interfere with the submission of measures as so provided by the Constitution. And if the constitutional provisions should not be so complied with in the submission of a substitute for the initiated measure, the people would be denied their right to choose between the two.

*Farris,* 143 Me. at 231, 60 A.2d 908. Because voters could only vote yes or no on one bill, the provisions of section 18 relating to a plurality vote also would be frustrated. If neither competing measure receives "a majority of the votes given for or against both," then section 18(2) requires "the one receiving the most votes shall ... be submitted by itself if it receives more than ⅓ of the votes given for and against both." Without doubt, the Legislature's use of a "fade-away" measure, without a referral to referendum with a competing measure, would frustrate the right of the people to vote on both.

We answer Question 2 in the negative.

■ Question 3 asks "whether the Legislature may convene in Special Session to enact emergency legislation without referring that emergency legislation to the electors as a competing measure."

We are asked to assume the emergency legislation would be effective prior to the November election, would contain provisions inconsistent with the initiated measure, and would contain an automatic repeal clause for repeal of the legislation on or before the effective date of the initiated measure in the event it is approved.

The Law Court has previously held that the Legislature may be confronted with emergencies that require immediate action to avoid injury to the state. In such situations, the Legislature is free, pursuant to article IV, part 3, section 16 of the Constitution, to pass emergency legislation that amends laws falling within the scope of an initiated measure and effective when approved by the Governor, without interfering with the pending initiative process. *McCaffrey v. Gartley,* 377 A.2d 1367, 1371 (Me.1977). The power to enact emergency legislation, however, is con-

stitutionally limited as set forth in *Morris v. Goss,* 147 Me. 89, 98, 83 A.2d 556, 561 (1951):

> Whether or not such fact or facts [as set forth in an emergency preamble] *can constitute an emergency* within the meaning of the Constitution is . . . a question of law. These questions of law may be reviewed by this Court.

The mere pendency of the initiative does not constitute an emergency within the meaning of the Constitution. The automatic repeal of the inconsistent emergency legislation on passage of the initiative does not avoid the constitutional problems described above in answer to Question 2.

We answer Question 3 in the affirmative, subject, however, to the qualifications expressed herein.

/s/   Daniel E. Wathen
Daniel E. Wathen
Chief Justice
/s/   David G. Roberts
David G. Roberts
/s/   Caroline D. Glassman
Caroline D. Glassman
/s/   *
Robert W. Clifford
/s/   Paul L. Rudman
Paul L. Rudman
/s/   *
Howard H. Dana, Jr.
/s/   Kermit V. Lipez
Kermit V. Lipez
Associate Justices

---

* CLIFFORD and DANA, JJ., were not available to participate.