DEPARTMENT OF CORRECTIONS

v.

SUPERIOR COURT.

Supreme Judicial Court of Maine.

Argued Oct. 1, 1992.
Decided March 16, 1993.

**1132**

David Crook, Dist. Atty., Paul Rucha (orally), Asst. Dist. Atty., Augusta, for Superior Court.

Gail Flewelling (orally), Mazziotti & Flewelling, William Knowles, Carl Kandutsch, Verrill & Dana, Portland, for Maine Civil Liberties Union.

Michael Carpenter, Atty. Gen., Diane Sleek (orally), Asst. Atty. Gen., Augusta, for Dept. of Corrections.

Thomas Tilton, Shiro & Shiro, Waterville, for Arthur Ellis.

Stephen O'Donnell, Goodspeed & O'Donnell, Augusta, for Fawn Buzzell.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

PER CURIAM.

District Attorney David W. Crook and the Maine Civil Liberties Union (MCLU)[1] challenge a judgment entered in the Supreme Judicial Court (*Wathen, C.J.*) granting extraordinary relief in favor of the Department of Corrections (the Department). The Supreme Judicial Court found that the Superior Court had exceeded its statutory authority by imposing five "Special Conditions of Judgment and Commitment"[2] on sentences imposed on two convicted, borderline mentally retarded, child sexual offenders. Accordingly, the Court ordered the Superior Court to delete the conditions. The appellants argue that the Superior Court had the constitutional power and duty to address its concerns about the safety of the offenders if sentenced to the Department. Because the Superior Court lacked the authority to impose the five special conditions as part of its judgment and commitment, we affirm the judgment of the Supreme Judicial Court.

Fawn Buzzell is a 56-year-old male convicted in a jury-waived trial in the Superior Court (Kennebec County, *Alexander, J.*) on August 8, 1991, of one count of unlawful sexual contact with a seven-year-old boy. Arthur Ellis, a 33-year-old male, pleaded guilty in the Superior Court (Kennebec County, *Alexander, J.*) to rape and unlawful sexual contact with a 15-year-old girl.

Prior to the sentencing hearings on Buzzell and Ellis, the Superior Court, concerned about the treatment Buzzell and Ellis would receive if sentenced to the Department, ordered that presentence investigations be prepared and, as part of each order, made the following entry:

> Department of Corrections shall prepare a plan for commitment and protection of the defendant if committed to the DOC. They shall adequately consider the defendant's mental condition and situation as a potentially committed child sex offender.

The Department subsequently filed presentence investigation reports that the court viewed as inadequate because they merely recited standard operating procedure. On October 31, 1991, the Superior Court held sentencing hearings on Buzzell and Ellis and issued an order in each case that contained the following:

> On or before December 4, 1991, the Department of Corrections shall file with the court a proposed plan to assure that

---

1. Both before the Supreme Judicial Court and this Court, this matter was briefed and argued on behalf of the Superior Court by David W. Crook, District Attorney for Kennebec County, and the Maine Civil Liberties Union, who had been granted amicus curiae status.

2. The five "Special Conditions of Judgment and Commitment" at issue are:
   1. Defendant to receive expedited classification.
   2. Defendant to be transferred to Bucks Harbor or some other medium security facility after classifications.
   3. While in Department of Corrections facilities the Defendant to receive psychological and sex offender counseling.

   4. A staff member shall have specific responsibility to monitor the defendant's condition and circumstances while incarcerated, to recognize that the defendant, because of his condition, may not take the initiative to speak or act in his own behalf, and to attempt to assure that conditions which may subject the defendant to abuse do not arise during the defendant's time at the Department of Corrections.
   5. The conditions and statements of the Department of Corrections response of December 4, 1991 are incorporated by reference herein.

any incarceration of [Buzzell and Ellis] will be decent and safe consistent with *the obligation of the court and the Department of Corrections to assure that sentences imposed by the court do not amount to cruel or unusual punishment.*

The court also noted that Buzzell's sentence posed special problems, in that Buzzell, in his dealings with adults, tends to be "submissive, compliant, and easily taken advantage of." The court expressed its concern about the appropriateness of committing a person such as Buzzell to the Department. While acknowledging the seriousness of the defendant's crime and past conduct, the court recognized that it "is constitutionally obligated to assure that the sentences which it imposes, on any person, do not amount to cruel or unusual punishment in violation of standards articulated under the Eighth Amendment of the United States Constitution and Article I, § 9 of the Maine Constitution." The court recognized that issues concerning the conditions of incarceration usually arise only after sentencing through civil actions or petitions for post-conviction relief, but reasoned that a different situation presented itself with respect to questions regarding sentencing of child sex offenders of Buzzell's mental status and vulnerability. The court carefully distinguished Buzzell and Ellis from sex offenders of "adequate intellectual and physical capacity" who the court felt could be safely sentenced to the Department. The court clearly viewed both defendants as members of a distinct group of sex offenders who "do not have the intellectual capacity to look out for their own best interest, who are easily taken advantage of, and most likely [will] be subject to abuse and degradation without complaint." This evaluation of Buzzell was based on the report of the "highly experienced clinical psychologist" who evaluated Buzzell.

As a result of the identified problems with sentences of child sexual offenders with limited intellectual capacity, the court concluded that it was incumbent on the Department to develop a plan to ensure the decent, safe incarceration of such individuals. The court noted that absent such a plan, the court would have no alternative but to impose a disposition involving county jail, not Department, time—a disposition that would effectively result in less supervision than the circumstances of the case would otherwise warrant. As a result of perceived constitutional constraints, the court reached this conclusion despite its recognition that such limited supervision would be in neither Buzzell's nor society's interest because of Buzzell's need for supervision and society's needs for protection.

On December 9, 1991, Ellis was sentenced to the Department for 6 years, with all but 2 years suspended, followed by 6 years probation. On the same date, Buzzell was sentenced to the Department for 5 years, with all but 4 years suspended, followed by 4 years of probation. Both sentences contained the "Special Conditions of Judgment and Commitment."

On December 19, 1991, the Department filed a motion to delete the sentence conditions. At a hearing on January 2, 1992, the Attorney General requested that the court delete the conditions because the "order [was] illegal and also impossible to comply with." Reasoning that sentencing the defendants to the Department without the conditions of incarceration would amount to cruel and unusual punishment, the court denied the motions. The court also reasoned that it had the inherent authority to impose the conditions in the discharge of its constitutional obligation to ensure that sentences do not violate the prohibition against cruel or unusual punishment as well as the implicit authority flowing from 17–A M.R.S.A. § 1151 (1983 & Supp.1992) (setting forth purposes of general sentencing provisions).

In January 1992, the Attorney General filed in the Supreme Judicial Court, on behalf of the Department, a complaint for relief in the nature of mandamus or prohibition pursuant to M.R.Civ.P. 81(c). The case was submitted to the Court on briefs and on the record of the Superior Court. Reasoning that the Superior Court had exceeded its statutory authority, the Court

ordered that the special conditions be deleted. This appeal followed.

Initially we address whether the complaint for mandamus or prohibition was properly before the Supreme Judicial Court. Although the extraordinary writs of mandamus and prohibition have been abolished in Maine, *see* M.R.Civ.P. 81(c), relief in the nature of mandamus or prohibition "may be obtained by appropriate action or motion under the practice prescribed by [the Maine Rules of Civil Procedure]." *Id.*

■■■ The Department's action was brought pursuant to 14 M.R.S.A. § 5301 (1980) and 4 M.R.S.A. § 7 (1989).[3] The latter statute authorizes the Supreme Judicial Court to correct errors and abuses of inferior courts, by writ or otherwise, when the law does not expressly provide a remedy. The former statute confers on the Supreme Judicial Court and the Superior Court concurrent original jurisdiction in proceedings in the nature of prohibition and mandamus. Accordingly, we conclude that the complaint was properly before the Supreme Judicial Court, and we have no reason to decide whether the relief granted should appropriately be reviewed under the rubric of mandamus or of prohibition. In either case, the appropriate defendant should be the Superior Court, rather than the individual justice. We have modified the caption accordingly.

Before the Supreme Judicial Court and on this appeal, the Department argued that relief in the nature of an extraordinary writ was the only adequate remedy, that the Superior Court had exceeded its statutory authority by imposing the special conditions at issue, and that sentencing proceedings are not the proper forum for dealing with constitutional concerns about conditions of confinement. The MCLU, as intervenor, argues that the statutory authority of the Department over places of confinement is limited by constitutional constraints and that the conditions were properly imposed. The Supreme Judicial Court, relying primarily on 17–A M.R.S.A. § 1258 (Supp.1992) (commissioner has "complete discretion" in determination of initial place of confinement), 34–A M.R.S.A. § 1402 (1988) (commissioner responsible for general supervision, management, and control of committed offenders in any correctional facility), and 34–A M.R.S.A. §§ 1201, 3061 (1988 & Supp.1992), concluded that:

> The sentencing justice is free to consider the likely disposition of the prisoner if incarcerated and even to recommend certain conditions to the Department. Under existing law, the sentencing justice has no authority to invade the exclusive province of the Department by mandating that such conditions be met.

On this appeal, the MCLU essentially argues that the Supreme Judicial Court failed to consider the main issue in this case, i.e., whether the Superior Court had the constitutional power and duty to impose the conditions at issue.

■■■ The courts of this state always have the power and duty to uphold the State and Federal Constitutions. "It is the duty of every Court to protect and uphold the State and Federal Constitutions. A single justice of the Supreme Judicial Court, or of the Superior or any other statutory court, has the *power* to pass upon the constitutionality of a Statute if the question be in issue." *Opinion of the Justices*, 147 Me. 25, 31, 83 A.2d 213, 216 (1951) (emphasis in original). Similarly, we think it axiomatic that the courts in this state, if their power is invoked by appropriate process, have the power and duty to relieve prisoners from conditions of incar-

---

**3.** 14 M.R.S.A. § 5301 (1980) provides in relevant part: "The Supreme Judicial Court and the Superior Court shall have and exercise concurrent original jurisdiction in proceedings in ... prohibition ... [and] ... mandamus...."

4 M.R.S.A. § 7 (1989) provides in relevant part as follows:

The Supreme Judicial Court may exercise its jurisdiction according to the common law.... It has general superintendence of all inferior courts for the prevention and correction of errors and abuses where the law does not expressly provide a remedy.... It may issue all writs and processes, not within the exclusive jurisdiction of the Superior Court, necessary for the furtherance of justice or the execution of the laws in the name of the State....

ceration that amount to cruel or unusual punishment in violation of article I, section 9 of the Maine Constitution or the eighth amendment to the United States Constitution. As we have previously noted:

It is within the power, and is the duty as well as the function of this Court to safeguard and protect within the borders of this State the fundamental principles of government vouchsafed to us by the State and Federal Constitutions. We should be ever alert to exercise our constitutional authority not only to uphold and maintain the Constitution against direct attack, but also to repel so far as lies within our power the first step toward the invasion of its guaranties.

This court has always accepted the challenge of this duty.

*Morris v. Goss,* 147 Me. 89, 106, 83 A.2d 556, 565 (1951). "This court has never hesitated to exercise its power and authority to protect the individual from an unconstitutional invasion of his rights by the legislative [or executive] branch[es] of government." *Id.* at 107, 83 A.2d at 565.

 Although the Superior Court relied on its power and duty to uphold the provisions of the Maine and the United States Constitutions, and the MCLU defends the court's action on the same basis, that reliance is misplaced. We do not denigrate the significance of the oath that all judges take to uphold both Constitutions, but that oath does not confer a roving commission to seek out and correct violations. Judges must also adhere to the constitutional limitations on judicial power. The exercise of that power is not vested in judges, it is vested in courts; and the power of courts must be invoked by appropriate process. *See, e.g., Carlson v. Oliver,* 372 A.2d 226 (Me.1977); *Duncan v. Ulmer,* 159 Me. 266, 191 A.2d 617 (1963). In the case at bar, the trial court had before it no vehicle that invoked a supervisory power over the Department of Corrections.[4]

We do not undermine the authority of the trial court to conduct a sentencing hearing and to inquire into the options available to aid the court's sentencing discretion. The court may make appropriate recommendations to the Department in its handling of the defendants. The court's choices, however, are limited to the statutorily prescribed dispositions, no matter how unsatisfactory those options may be.

The entry is:

Judgment affirmed.

All concurring.

---

4. Such proceedings would include actions under 42 U.S.C. § 1983 and 15 M.R.S.A. §§ 2122–2132 (Supp.1992) (post-conviction review). The trial court on motion or *sua sponte* can protect the defendant by staying the execution of any criminal judgment entered pending the conclusion of the collateral proceedings. *See Cutler Assocs., Inc. v. Merrill Trust Co.,* 395 A.2d 453, 456 (Me. 1978) (court may temporarily stay the execution of its judgment whenever necessary to accomplish the ends of justice).