MAINE SUPREME JUDICIAL COURT                                   Reporter of Decisions
Decision:     2020 ME 130
Docket:       Ken-19-512
Argued:       September 17, 2020
Decided:      November 5, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

DOUGLAS BURR

v.

DEPARTMENT OF CORRECTIONS et al.

HORTON, J.

[¶1]  Douglas Burr, an inmate at the Maine State Prison, appeals from a judgment entered by the Superior Court (Kennebec County, *Murphy, J.*) in which the court vacated a disciplinary decision of the Department of Corrections but concluded that the court lacked authority to enjoin the Department from engaging in unconstitutional practices related to solitary confinement pursuant to 42 U.S.C.S. § 1983 (LEXIS through Pub. L. No. 116-169).  We conclude that (1) the Maine Constitution's strong mandate regarding separation of powers does not preclude an award of injunctive relief on a § 1983 claim against the Department and (2) restoration of Burr's "good time,"[1] which he lost while he

---

[1]  "Good time" is a popular descriptor for the deduction of days per month from sentences that prisoners in the custody of the Department of Corrections can earn based on good conduct and fulfillment of responsibilities while in custody.  *See* 17-A M.R.S. §§ 2307-2311 (2020).

was in nondisciplinary segregation, is not a remedy available through judicial review of the Department's disciplinary action against Burr. We therefore remand for the court to order the restoration of good-time credit for the period of nondisciplinary segregation as a remedy for Burr's § 1983 claim, for the court to determine whether Burr is entitled to additional injunctive relief, and for the court to consider whether to award Burr attorney fees pursuant to 42 U.S.C.S. § 1988 (LEXIS through Pub. L. No. 116-169).

## I. BACKGROUND

[¶2] The following chronological summary includes facts found by the court, which are supported by competent evidence admitted at trial, and procedural events, which are supported by the record of the administrative and court proceedings. *See Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 8, 226 A.3d 227; *Carryl v. Dep't of Corr.*, 2019 ME 114, ¶ 2, 212 A.3d 336.

[¶3] Douglas Burr is serving a fifty-nine-year sentence at the Maine State Prison. Sometime before June 2014, the prison's Inner Perimeter Security Team began investigating Burr and his wife for trafficking in prison contraband. In June 2014, a corrections corporal completed a disciplinary report alleging that Burr had engaged in trafficking.

[¶4]  Burr was placed on "Emergency Observation Status" (EOS) in June 2014 pending further investigation.  After he left EOS, Burr was held in "restrictive housing" for approximately twenty-two months.  For the first ten months, he was held in the most restrictive status at the prison (administrative segregation), and for the next twelve months, he was held in the next most restrictive status (the Administrative Control Unit (ACU)).

[¶5]  In administrative segregation, he occupied a cell measuring eight feet by twelve feet and was given meals through a slot in the door.  Two days per week, he was in the cell for twenty-four hours.  He had five hours per week of recreation time, though he remained in restraints.  He had three showers, one "no contact" visit, and one phone call each week.  The unit was chaotic, with prisoners yelling, banging on doors, throwing feces, harming themselves, and being subjected to forcible extractions from their cells for their behavior.

[¶6]  In July 2014, while Burr was in administrative segregation, a disciplinary hearing on the trafficking charge was held.  Burr presented no witnesses and offered no defense due to the possibility of criminal charges.  A disciplinary segregation sanction of twenty days and a fine of $100 were imposed, and Burr lost twenty days of good-time credit against his sentence.  Upon Burr's appeal, the Department affirmed this decision in August 2014.

4

[¶7]  On September 4, 2014, Burr filed the complaint at issue here in the Superior Court.  In that complaint, he sought, in Count 1, judicial review of the disciplinary decision, *see* M.R. Civ. P. 80C, and, in Count 2, an injunction, for violations of his civil rights, *see* 42 U.S.C.S. § 1983, requiring the Department and several named Department actors[2] to stop holding Burr in segregation, along with attorney fees.[3]

[¶8]  Although a captain in the Department recommended Burr's release from administrative segregation in August 2014, December 2014, and January 2015 so that Burr could serve his disciplinary time, the deputy warden rejected those recommendations.

[¶9]  By April 2015, Burr had been transferred to the ACU, which provided for increasing privileges as a prisoner progressed through levels. There, Burr was allowed a radio, a hot pot, longer visits, and more phone calls. He was returned to the general population in March 2016.  During the entire

---

[2] The named defendants are Rodney Bouffard, Troy Ross, Mark Engstfeld, Kenneth Vigue, Harold Abbott, and David Allen.

[3] Burr also asserted a third count, seeking compensatory and punitive damages, costs, and attorney fees against Corporal Mark Engstfeld for falsifying a disciplinary report in violation of Burr's civil rights.  The court ultimately entered a summary judgment for Engstfeld on that count, and because that count is not at issue on appeal, we do not discuss it further.

period of segregation, he was not accruing credit against his sentence for good time.

[¶10]  In handling Burr's Rule 80C action and § 1983 claim concerning these events, the court entered an order on cross-motions for summary judgment in January 2017.  On Count 1, the court granted Burr's Rule 80C petition for review and vacated the disciplinary decision and accompanying sanctions, ordering the Department to expunge Burr's disciplinary record and restore lost good-time credit.  On Count 2, the court requested additional briefing with respect to the mootness of the § 1983 claim given that Burr was no longer in segregation.

[¶11]  After receiving additional materials from the parties, the court concluded that the exception to mootness for questions of great public concern applied and that summary judgment could not be entered on the § 1983 claim because there were questions of material fact.  Although the Department filed a "supplemental" motion for summary judgment in August 2017, the court denied that motion in January 2018, and a trial was held on June 11 and 12, 2019.

[¶12]  Burr and multiple employees of the Department testified, as did an expert in criminal justice management, and the court admitted documentary

6

evidence of the Department's actions and policies. Because the Department had already afforded Burr the specific relief that he sought in his complaint by releasing him from segregation, Burr asked for different relief[4] in his post-trial brief—an injunction against multiple practices, including "[h]olding an inmate in Administrative Segregation as a security risk without developing objective criteria for the individual's release as a security risk" and "[r]equiring that an individual confess to a violation of the Prison's disciplinary rules before being released from Administrative Segregation."

[¶13]  The court ultimately found that there was no evidence that Burr had been violent or threatened violence to anyone before his confinement in restrictive housing or that he had engaged in any misconduct during the twenty-two months he spent segregated from the general population.  Based on a detailed summary of testimony, the court found that the Department had made extensive changes to its segregation practices since Burr had been held in segregation, in large part due to a *Frontline* documentary on the conditions in the prison.

---

[4] Burr filed no motion to amend the complaint, but the Department does not argue on appeal that an amended complaint was necessary.  *See* M.R. Civ. P. 15.

[¶14]  The court decided that Burr's due process rights had been violated because

- the process for reviewing his segregation status had not been meaningful,

- he could not know what he had to accomplish to leave restrictive confinement,

- even important decisionmakers could not agree on why he was kept in segregation for so long or what portion of his segregation was disciplinary, and

- it was inappropriate to hold him in segregation coercively until he admitted misconduct.

The court concluded, however, that it lacked authority to order the Department to adopt policies prohibiting holding a person in segregation to extract an admission or limiting the number of days during which a person may be held in segregation.  The court held that, "given the significant changes that have taken place at MSP," requiring the Department to return Burr's good-time credit and vacating the fine imposed by the prison—the remedies it had granted on the Rule 80C count—were the only remedies it could grant Burr.  Based on its conclusion that Burr was not entitled to any relief on his § 1983 claim, the court entered judgment on that claim for the Department and the other named defendants.

[¶15]  Burr moved for additional findings of fact and to alter or amend the judgment, requesting judgment in his favor on the § 1983 claim, an award

8

of attorney fees on that claim, and the restoration of good-time credit for the period of his nondisciplinary segregation. *See* M.R. Civ. P. 52(b), 59(e). The court clarified, in an order entered in December 2019, that (1) it was ordering the restoration of Burr's good-time credit for the entire time he spent in both disciplinary and nondisciplinary segregation as part of the Rule 80C relief and (2) attorney fees could not be awarded on the § 1983 claim pursuant to 42 U.S.C.S. § 1988 because Burr had not "prevailed" in obtaining injunctive relief pursuant to § 1983. In all other respects, the court denied Burr's motion.

[¶16] Burr timely appealed from the judgment. *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶17] We here consider (A) whether the court is precluded from entering injunctive relief because of the provision in the Maine Constitution mandating separation of powers and (B) whether the court's restoration of good-time credit for periods of nondisciplinary segregation exceeds the scope of remedies available through Burr's administrative appeal and can be granted only as a § 1983 remedy.

A.      Availability of Injunctive Relief

[¶18]  Burr argues that the court misinterpreted our opinion in *Bates v. Department of Behavioral & Developmental Services*, 2004 ME 154, 863 A.2d 890, to preclude the relief he requested, especially given that the decision in *Bates* did not reach issues of separation of powers and concerned the appointment of a receiver upon a contempt motion.  He argues that the law provides redress, including an order enjoining the Department from violating the Constitution, for significant due process violations.

[¶19]  The Department contends that courts may intercede in agency policymaking only in extraordinary circumstances not present here.  It argues that there is no ongoing or persistent constitutional violation to be remedied and that injunctive relief is not guaranteed by § 1983.

[¶20]   "We review issues of constitutional interpretation de novo." *Goggin v. State Tax Assessor*, 2018 ME 111, ¶ 20, 191 A.3d 341 (quotation marks omitted).  The authority of the courts of the State of Maine is defined in the Maine Constitution, which establishes three separate branches of government: the legislative, the executive, and the judicial.  Me. Const. art. III, § 1.  The Constitution enforces the separation of powers by providing: "No person or persons, belonging to one of these departments, shall exercise any of the

powers properly belonging to either of the others, except in the cases herein expressly directed or permitted." Me. Const. art. III, § 2. The Maine Constitution thus bars Maine courts' exercise of executive or legislative power, and we have held that the separation is "much more rigorous" than the bar imposed by the United States Constitution upon the federal courts' exercise of nonjudicial power. *Bates*, 2004 ME 154, ¶ 84, 863 A.2d 890 (quotation marks omitted).

[¶21] For these reasons, "courts are reluctant to interfere with penal control and management." *Raynes v. Dep't of Corr.*, 2010 ME 100, ¶ 13, 5 A.3d 1038 (quotation marks omitted). The oath for judicial office "does not confer a roving commission to seek out and correct violations. Judges must also adhere to the constitutional limitations on judicial power." *Dep't of Corr. v. Superior Ct.*, 622 A.2d 1131, 1135 (Me. 1993). For instance, courts may not "directly interfere[] with the performance by the agency of its statutory [investigatory] duties." *New England Outdoor Ctr. v. Comm'r of Inland Fisheries & Wildlife*, 2000 ME 66, ¶ 11, 748 A.2d 1009 (quotation marks omitted).

[¶22] Based on the constitutional separation of powers, we held that a trial court that imposed conditions on two convicted sex offenders' sentences lacked the power to do so because the court "had before it no vehicle that invoked a supervisory power over the Department of Corrections." *Dep't of*

*Corr.*, 622 A.2d at 1132-33, 1135. We stated in a footnote, however, that actions in which injunctive relief against the Department may be ordered "*would include actions under 42 U.S.C. § 1983.*" *Id.* at 1135 n.4 (emphasis added).

[¶23]  In *Bates*, which the Superior Court relied on here, we concluded that the appointment of a receiver to operate the Augusta Mental Health Institute was inappropriate because "less intrusive remedies should have been attempted" first.  2004 ME 154, ¶¶ 36, 87, 863 A.2d 890.  As we stated, "A court is justified in appointing a receiver when more common remedies, such as *injunctive relief* or contempt proceedings, have failed to achieve the objectives of a court order." *Id.* ¶ 86 (emphasis added).  Although we mentioned the separation of powers, we did not decide the case on that basis, instead holding that the "appointment of a receiver to operate and direct the affairs of AMHI was not a sustainable exercise of discretion." *Id.* ¶¶ 82-87.  *Bates*, like *Department of Corrections*, supports the conclusion that injunctive relief can be an appropriate remedy for a civil rights violation in a § 1983 claim.

[¶24]  Federal courts have similarly observed that, although there are limits on the capacity of a court to enjoin corrections practices, injunctive relief is not precluded altogether.  "It is . . . important that federal courts abstain from imposing strict standards of conduct, in the form of injunctions, on prison

officials in the absence of a concrete showing of a valid claim and constitutionally mandated directives for relief. The courts should not get involved *unless either a constitutional violation has already occurred* or the threat of such a violation is both real and immediate." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) (emphasis added); *see Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971) ("[J]udicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of [local] authorities whose powers are plenary. Judicial authority enters only when local authority defaults.").

[¶25] Due to the risk that an injunction "would produce too much interference with prison administration and leave too little discretion in the hands of prison officials who must deal with the very difficult issues of security within their institutions," *Rogers*, 676 F.2d at 1214, injunctive relief, although not forbidden in federal courts, must be limited in its scope. *Compare Thomas v. Bryant*, 614 F.3d 1288, 1324, 1326 (11th Cir. 2010) (affirming an injunction that had a prospective effect on one inmate only), *with Lewis v. Casey*, 518 U.S. 343, 361-64 (1996) (vacating an injunction that was overly intrusive into the minutiae of prison operations).

[¶26]  Applying Maine's more rigorous separation of powers, *see Bates*, 2004 ME 154, ¶ 84, 863 A.2d 890, entering an injunction in this case to establish a specific policy on the number of days that a person can be held in segregation would constitute an intrusion on agency rulemaking.  *See* Me. Const. art. III, § 2; *Dep't of Corr.*, 622 A.2d at 1132-33, 1135; 5 M.R.S. §§ 8051-8073 (2020); 34-A M.R.S. § 1402(3) (2020).  It would be difficult to enunciate a constitutional limit on days in segregation that would apply in all circumstances.  *See* 3 Joseph G. Cook & John L. Sobieski Jr., *Civil Rights Actions* ¶ 11.18[D] (2020) (stating that "prisoners placed in punitive segregation should not be held a disproportionately long time compared to the offense committed" and that "administrative segregation may be imposed for an indefinite period as long as the least restrictive means are employed").

[¶27]  On the other hand, we see no obstacle to an injunction prohibiting the Department from placing or keeping prisoners in segregation solely for the purpose of coercing an admission to wrongdoing.  The court concluded that the public interest exception to the mootness doctrine applied and that the practice violated due process and served no legitimate criminological purpose—a conclusion to which the Department acceded at trial.  *See Raynes*, 2010 ME 100, ¶ 19, 5 A.3d 1038 ("'[W]hen a prison regulation impinges on inmates'

constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987))). Similarly, the court could enjoin the Department from holding an inmate in segregation without developing, communicating, and applying objective criteria for the inmate to obtain release from segregation—another constitutional violation identified by the trial court. To enjoin that conduct in the future would not affirmatively create a new administrative regulation without the proper rulemaking process but rather would enjoin specific conduct that the court found unconstitutional—a power that rests with the judiciary. *See Dep't of Corr.*, 622 A.2d at 1135 & n.4; *Hunt v. Bartman*, 873 F. Supp. 229, 251-52 (W.D. Mo. 1994) (permanently enjoining state education agencies and officials from persisting in conduct violating the Individuals with Disabilities in Education Act and ordering them to implement compliant procedures). Such injunctive relief only defines what is prohibited and leaves it to the Department to decide how to comply.

[¶28] Moreover, the trial court has, in effect, granted injunctive relief in the form of its order restoring Burr's good-time credit for the entire period during which he was in some type of segregation. Although we are remanding to enable the court to determine whether additional injunctive relief is

appropriate, we do not express any view as to how the court should respond. The court's finding that the Department has eliminated the practices of which Burr complained is well supported in the evidence, and the court may decide that no additional injunctive relief is called for.[5] Because changes in practice do not necessarily reflect changes in policy, however, the court may decide that injunctive relief is necessary to ensure that constitutionally prohibited practices do not recur.

B.    Restoration of Good-Time Credit for the Period of Nondisciplinary Segregation

[¶29]    Burr argues that the court's order for the restoration of twenty-two months of lost good-time credit establishes that he prevailed on his § 1983 claim because his Rule 80C claim challenged only the Department's disciplinary decision, which resulted in disciplinary segregation for just twenty days.  We agree.

---

[5] "Three factors must be met for a court to grant a permanent injunction: (1) the party seeking the injunction would suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting injunctive relief would inflict on the opposing party; and (3) the public interest will not be adversely affected by granting the injunction." *Stanton v. Strong*, 2012 ME 48, ¶ 11, 40 A.3d 1013 (alterations omitted) (quotation marks omitted). "Irreparable injury is defined as injury for which there is no adequate remedy at law." *Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 10, 837 A.2d 129 (quotation marks omitted). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).

[¶30]  Under the Administrative Procedure Act, a court may, on appeal from an agency decision,

**A.** Affirm the decision of the agency;

**B.** Remand the case for further proceedings, findings of fact or conclusions of law or direct the agency to hold such proceedings or take such action as the court deems necessary; or

**C.** Reverse or modify the decision if the administrative findings, inferences, conclusions or decisions are:

**(1)** In violation of constitutional or statutory provisions;

**(2)** In excess of the statutory authority of the agency;

**(3)** Made upon unlawful procedure;

**(4)** Affected by bias or error of law;

**(5)** Unsupported by substantial evidence on the whole record; or

**(6)** Arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S. § 11007(4) (2020).

[¶31]  Section 1983 allows individuals to bring "an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C.S. § 1983.  Attorney fees cannot be awarded unless a party prevails in the § 1983 action.  *See* 42 U.S.C.S. § 1988(b) (providing, with respect to a § 1983 claim, that "the court, in its discretion, may allow the *prevailing party*, other than the United States, a

reasonable attorney's fee as part of the costs" (emphasis added)). "[W]hen no relief can be awarded pursuant to § 1983, no attorney's fees can be awarded under § 1988." *Camps Newfound/Owatonna Corp. v. Town of Harrison*, 1998 ME 20, ¶ 7, 705 A.2d 1109 (quotation marks omitted); *see generally Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 600, 605 (2001) (holding that the term "prevailing party" does not include "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" and stating that "prevailing" requires an "alteration in the legal relationship of the parties").

[¶32]  Burr's initial pleading plainly differentiates between seeking judicial review of the Department's disciplinary action and seeking injunctive relief for separate violations of his constitutional rights.  Count 1, brought pursuant to Rule 80C, was focused on the disciplinary proceeding that resulted in the July 2014 imposition of discipline on Burr—a decision that was affirmed by the Department in August 2014.  Count 2 asserted civil rights violations based on conduct in the disciplinary action and conduct that was well outside

18

the scope of that proceeding.   Burr alleged in Count 2 that the named defendants' actions

> in placing Douglas Burr on Emergency Observation Status, placing him in solitary confinement in the Special Management Unit, failing to follow their own Department Policies and Procedures, and taking disciplinary action against Douglas Burr were arbitrary and capricious and violated Douglas Burr's federally protected rights.

[¶33]  The trial court explicitly found that "important decision-makers could not agree on when [Burr] was in disciplinary segregation, when he was in administrative segregation, and what exactly he had done to justify his separation from general population for such an extended time."[6]  The court's finding acknowledges that all parties considered Burr to have been in nondisciplinary segregation for a substantial period of time for undefined reasons.

[¶34]  Because only disciplinary segregation was at issue under Burr's Rule 80C petition, the court's restoration of good-time credit lost during *nondisciplinary* segregation could only have been granted as a remedy on the § 1983 claim.   The Department has not challenged either the trial court's

---

[6] In its judgment, the court also referenced expert opinion that the prison officials had articulated no reason for keeping Burr in segregation and summarized the testimony of the Commissioner of the Department of Corrections who was serving at the time of Burr's segregation that the rationale for segregating Burr until he admitted to trafficking did not make sense and did not serve a legitimate criminological purpose.

findings of constitutional violations beyond the disciplinary proceeding findings or the remedy of restoration of all lost good-time credit, both of which are amply substantiated in the record.

[¶35]  We therefore vacate the portions of the court's judgment denying injunctive relief, restoring good-time credit for the period of Burr's nondisciplinary segregation pursuant to his Rule 80C petition, and entering judgment for the defendants on the § 1983 claim, and remand for the court to (1) determine whether injunctive relief should be awarded; (2) enter judgment in Burr's favor on his § 1983 claim; (3) order, as a remedy for the constitutional violations alleged in his § 1983 claim, the restoration of good-time credit for the period of Burr's nondisciplinary segregation; and (4) consider awarding attorney fees pursuant to § 1988.

The entry is:

> Judgment vacated to the extent that the court (1) concluded that it was prohibited from entering injunctive relief on the § 1983 claim, (2) restored good-time credit for the period of nondisciplinary segregation as a remedy for Burr's Rule 80C claim, and (3) entered judgment for the defendants on the § 1983 claim. Remanded for the court to (1) enter judgment for Burr on the § 1983 claim, (2) order the restoration of good-time credit for the period of nondisciplinary segregation as a remedy for Burr's § 1983 claim, (3) determine whether Burr

has established entitlement to other injunctive relief, and (4) consider an award of attorney fees pursuant to § 1988.

---

Eric M. Mehnert, Esq. (orally), Hawkes & Mehnert, PC, Orono, for appellant Douglas Burr

Aaron M. Frey, Attorney General, and Jason Anton, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellees Department of Corrections et al.

Kennebec County Superior Court docket number AP-2014-57
FOR CLERK REFERENCE ONLY